## APPEAL OF CROWLEY BROTHERS, INC.

Docket No. 2918. Submitted June 1, 1925. Decided September 8, 1925.

Evidence *held* insufficient to justify special assessment under sections 327 and 328 of the Revenue Act of 1918.

*John T. Kennedy* and *James W. Beller, Esqs.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1919 in the amount of $1,274.87.

The taxpayer seeks special assessment under the provisions of sections 327 and 328 of the Revenue Act of 1918 and predicates its claim of abnormality solely upon the fact that its president received no salary. The taxpayer claims that the services of its president justified $60,000 as his compensation for 1919 and that the salary of its treasurer should, by comparison with the salaries paid in other companies, have been $30,000 in 1919 instead of $20,000 actually paid.

### FINDINGS OF FACT.

The taxpayer is a Michigan corporation with its principal office located in Detroit where it engaged in the wholesale dry goods business. Its business was done, in the main, within the City of Detroit and territory adjacent thereto.

The taxpayer submitted as comparatives Edson-Moore & Co. and the Burnham-Stoefel Co., both corporations, engaged in the wholesale dry goods business in Detroit and selling throughout the same territory as that covered by the taxpayer.

Comparative figures for the taxpayer and those two corporations during the year 1919 are:

|  | Edson-Moore & Co. | Burnham-Stoefel Co. | Taxpayer |
|---|---|---|---|
| Sales | $6,345,122.37 | $6,670,080.77 | $3,118,627.11 |
| Invested capital | 1,435,821.82 | 2,008,367.32 | 923,505.89 |
| Net income | 662,866.18 | 476,584.97 | 533,745.68 |
| Officers' compensation | 113,394.11 | 81,999.92 | 20,000.00 |
| Excess profits tax | 183,634.69 | 77,565.41 | 161,181.94 |

The corporate officers of the taxpayer in 1919 were:

| Name | Office | Percentage of stock holdings | Time devoted | Salary paid |
|---|---|---|---|---|
| | | *Per cent* | | |
| J. J. Crowley | President | 55 | Partial | None. |
| W. C. Crowley | Treasurer | 15 | All | $20,000 |
| D. T. Crowley | Vice president | 18 | None | None. |
| Outside stockholders | | 12 | | |
| Total | | 100 | | 20,000 |

In addition, the taxpayer paid wages and salaries to others than officers totaling $274,582 during 1919.

J. J. Crowley spent part of his time each day in directing the policies of the taxpayer. The balance of his time was spent with the Crowley-Millner Co., a retail department store located in Detroit and occupying a city block with a seven-story structure. The Crowley-Millner Co. purchased goods from the taxpayer. J. J. Crowley owned about 48 per cent of the stock in the Crowley-Millner Co. The latter company did a larger volume of business than that done by the taxpayer. J. J. Crowley was about 63 years old. D. T. Crowley devoted no time to the taxpayer's business other than by attendance at directors' meetings. He was engaged in the stove business in Detroit.

In Edson-Moore Co., the president, A. P. Sherrill, a man 75 years old, was inactive in the business, the direct management of the company being attended to by Gillis, the treasurer, who in 1919 received a salary of $50,000. There were two vice presidents of that company, both of whom were active in the business.

The Burnham-Stoefel Co. had two executives, each of whom received $25,000 a year in 1919. Three others received less. That company also had an interest in a similar business in Kansas City. Rents, taxes, and salaries were higher in Detroit than in Kansas City and the percentage of profit in relation to sales was higher in Kansas City than in Detroit.

The Commissioner denied special assessment to the taxpayer and determined a deficiency amounting to $1,274.87. From that determination the taxpayer duly appealed.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

Marquette: There is no absolute standard in business as to the duties, services, and value of services of corporate officers. A cor-

porate officer is but an individual bearing a title, elected under the laws of the State of incorporation by the stockholders or by the directors. He may have certain statutory duties to perform. Usually the statutory functions of a president are to preside at stockholders' meetings, to sign stock certificates, and, generally, to be chairman of the board of directors. In business organizations done in the corporate form, the directors decide policies and delegate the execution of those policies to officers or to employees such as a general manager, superintendent, and so forth. The matter may be limited by the by-laws or may be left to the directors at their discretion. One man may hold several titles; he may have one set of duties as an employee and another set as an officer. His entire compensation may be paid him as an employee or as an officer, or it may be divided. His services as an official may be merely perfunctory while he has the full responsibility for the management of the business as an employee and yet his compensation may be received under the designation of a vice president or some other title. A man may be a corporate officer and have nothing to do with the active management of the enterprise. In the present appeal D. T. Crowley is an apt illustration of the latter situation, and not an unusual one to be found in corporate business. Likewise, a man may be the manager, and, as such, the person who is, really, responsible for the business success and still not hold any corporate office.

A grouping of the salaries of "corporate officers" in one company and comparing them with the salaries paid "corporate officers" in another company is a futile effort and unproductive of a fair basis for comparison.

D. T. Crowley was a vice president of the taxpayer and had no active connection with the business. Edson-Moore & Co. had two vice presidents who devoted all of their time to that business. Obviously enough the taxpayer had "employees" who performed services in their company similar to those performed by "vice presidents" in Edson-Moore & Co. and their compensation was included within the $274,582 paid as wages and salaries to others than officials. In both of those companies the "treasurer" was the real manager of the business and the salaries respectively paid them were, approximately, in the same ratio as the comparative sales of the two companies.

The taxpayer, it should be noted, does not seek to have its net income reduced by an additional allowance as reasonable salaries. If the further amount of $70,000 were deducted from its income, the excess profits tax of the taxpayer would still be a larger percentage of the net income than the tax of Edson-Moore & Co. Rather, the taxpayer seeks the benefit of a smaller percentage solely because no salary was paid its president. That, to our minds, is insufficient as

evidence of abnormality to justify the special relief afforded by sections 327 and 328 of the Revenue Act of 1918.

That the president of the taxpayer devoted some of his time to the affairs of the taxpayer without expecting compensation is not peculiar or unnatural. He owned 55 per cent of the stock and was interested in such execution of policies that would result in the largest possible dividends. He owned about half of the stock in the Crowley-Millner Co. which bought goods from the taxpayer. As an investor his eggs were divided between two baskets and quite properly he was wise to watch both baskets with equal care. The omission to pay a salary was clearly intentional. If otherwise, the taxpayer would be asking for a further deduction from income as reasonable salaries instead of trying to justify such salaries solely as a basis for comparatives to prove abnormality.

ARUNDELL not participating.